**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.: _______________

BREMSKERL CV, LLC,

Plaintiff,

v.

MEVOTECH LP,

Defendant.

---

**COMPLAINT**

---

Plaintiff Bremskerl CV, LLC (Bremskerl) brings this action against Defendant (Mevotech) as follows:

**NATURE OF THE CASE**

1. This is an action for trade dress infringement, unfair competition and false designation of origin, and dilution arising under Section 32 of the Trademark Act of 1946, as amended (the Lanham Act, 15 U.S.C. § 1051, *et seq.*), specifically 15 U.S.C. §§ 1114 and 1125, based on Mevotech's unauthorized use of a green colored trade dress that is confusingly similar to Bremskerl's federally registered, incontestable green trade dress for brake pads. Arising out of the same conduct, Bremskerl also asserts claims for common law trademark infringement and unfair competition under Colorado law and for deceptive trade practices under the Colorado Consumer Protection Act (the CCPA, C.R.S. § 6-1-105).

**PARTIES**

2. Bremskerl is a limited liability company organized under the laws of Illinois with its principal place of business at 1273 Humbracht Circle, Bartlett, IL 60103.

3. Upon information and belief, Mevotech is a limited partnership organized under the laws of Ontario, Canada, with its principal place of business at 240 Bridgeland Ave., Toronto, ON, CA M6A 1Z4.

4. Upon information and belief, Mevotech maintains a U.S. headquarters within this District at 1745 Shea Center Dr., Ste. 400, Highlands Ranch, CO 80129.

5. Upon information and belief, Mevotech is in the business of designing, manufacturing, marketing, distributing, offering for sale, and selling automotive and commercial-vehicle replacement parts, including infringing brake pads sold under the TTX brand, throughout the U.S., including in this District.

**JURISDICTION AND VENUE**

6. This is a civil action arising under the Lanham Act, 15 U.S.C. § 1051, *et seq*. This Court has subject matter jurisdiction over Bremskerl's federal claims pursuant to 15 U.S.C. §§ 1121 and 1125 and 28 U.S.C. §§ 1331 and 1338(a) and (b) because this action arises under an Act of Congress relating to trademarks and presents a federal question. This Court has supplemental jurisdiction over Bremskerl's related claims arising under Colorado statutory and common law pursuant to 28 U.S.C. § 1367(a) because those claims are so related to the federal claim that they form part of the same case or controversy.

7. This Court has personal jurisdiction over Mevotech because Mevotech has purposefully directed its infringing activities to Colorado and this District and Bremskerl's claim arises out of and relates to those activities. Upon information and belief, Mevotech conducts continuous and systematic business in Colorado and this District and maintains its U.S. headquarters in Colorado and this District, and markets, distributes, offers for sale, and sells its infringing green brake pads to consumers in Colorado and this District, including through national retailers, online marketplaces, and its network of distributors.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c). A substantial part of the events giving rise to Bremskerl's claims and a substantial part of Bremskerl's injuries and damages occurred in this District. Mevotech is subject to personal jurisdiction in this District. In addition, because Mevotech is not a U.S. resident it may be sued in any judicial district, including this District, pursuant to 28 U.S.C. § 1391(c)(3).

## FACTUAL BACKGROUND COMMON TO ALL CLAIMS

### A. *Bremskerl owns its distinctive and incontestable green trade dress for brake pads.*

9. Bremskerl designs, manufactures, and distributes high-performance brake solutions for commercial vehicles. Bremskerl serves the needs of fleets, OEMs, and aftermarket distributors throughout the U.S.

10. Bremskerl North America, Inc. (Bremskerl NA) was established in 2005 as a subsidiary of Bremskerl-Reibbelagwerke Emmerling GmbH & Co. KG, a German manufacturer of friction products that has operated since 1929. Bremskerl NA historically marketed and distributed its products throughout North America, Central America, and South America.

11. In June 2023, Bremskerl NA's commercial-vehicle business was purchased by Bremskerl CV, LLC, the Plaintiff herein. The company thereafter assumed responsibility for that business.

12. In connection with the separation, on June 9, 2023 Bremskerl NA assigned to Bremskerl the entire right, title, and interest in and to its green brake pad trade dress as reflected in U.S. Trademark Registration No. 6,280,107 (the '107 Registration) along with all goodwill symbolized by and associated therewith. A true and correct copy of the '107 Registration is submitted herewith as **Exhibit A**.

13. Bremskerl markets and distributes its products, including replacement brake pads, through specialized distributors, maintenance providers, installers, technicians, and other purchasers.

14. Since at least as early as May 2012, Bremskerl and its predecessor-in-interest, Bremskerl NA, have continuously used a distinctive green color—as further described and identified in the ’107 Registration—applied to the surface of its brake pads to identify and distinguish them from the brake pads of other providers (hereinafter, the Bremskerl Green Trade Dress).

15. The Bremskerl Green Trade Dress consists of the color green applied to the lining surface of vehicle brake pads. No word marks or other trademarks appear on the face of the pads. The green color itself functions as a unique source identifier.

16. Bremskerl has invested substantial time, effort, and money to advertise, promote, and sell its brake pads throughout the U.S., and has used the Bremskerl Green Trade Dress consistently across its brand including through its “look for” advertising that specifically highlights the Bremskerl Green Trade Dress as an indicator of source.

17. Bremskerl has consistently promoted the Bremskerl Green Trade Dress as a source identifier through trade publications, distributor materials, product flyers and direct outreach to end purchasers, including by distributing thousands of flyers highlighting the Bremskerl Green Trade Dress and placing advertisements in publications serving the bus, fleet, and commercial-vehicle markets.

18. Bremskerl’s brake pads employing the Bremskerl Green Trade Dress have received media coverage and have achieved material geographic reach across the U.S.

19. As a result of Bremskerl's long-term, continuous, and exclusive use of the Bremskerl Green Trade Dress, together with its extensive sales and promotion, the relevant consuming public and trade have come to recognize and identify the color green on brake pads as designating Bremskerl as the single source of such goods. The Bremskerl Green Trade Dress has acquired distinctiveness and secondary meaning.

20. Every Bremskerl brake pad is backed by decades of proven technology, manufactured under ISO 9001 or IATF 16949 quality standards. Bremskerl's green brake pads have achieved substantial commercial success. Bremskerl's lifetime sales of its green brake pads now exceed 250,000 sets with a retail value exceeding $30 million. The Bremskerl Green Trade Dress is one of the company's most valuable assets.

**B. *The '107 Registration is incontestable.***

21. Bremskerl is the owner of the '107 Registration which is registered on the Principal Register with the United States Patent and Trademark Office (USPTO) for the color green as applied to "brake pads for vehicles" in International Class 12, reflecting a date of first use in commerce of at least as early as May 31, 2012.

22. The '107 Registration is valid, subsisting, and in full force and effect.

23. The USPTO has accepted a combined declaration of use and incontestability under Sections 8 and 15 of the Lanham Act, 15 U.S.C. §§ 1058 and 1065, in connection with the '107 Registration. As a result, the '107 Registration is incontestable.

24. Under 15 U.S.C. § 1115(b), the incontestable '107 Registration constitutes conclusive evidence of the validity of the registered trade dress, of Bremskerl's ownership thereof, and of Bremskerl's exclusive right to use the color green in commerce on brake pads. By virtue of incontestability, Mevotech is foreclosed from challenging the '107 Registration on

the ground that the Bremskerl Green Trade Dress lacks secondary meaning or acquired distinctiveness.

25. The ’107 Registration further serves as constructive notice of Bremskerl’s ownership of and exclusive rights in the Bremskerl Green Trade Dress under 15 U.S.C. § 1072 and constitutes prima facie and, by reason of incontestability, conclusive evidence of Bremskerl’s exclusive right to use the Bremskerl Green Trade Dress on the goods identified in the registration under 15 U.S.C. §§ 1057(b) and 1115(b).

**C. *The Bremskerl Green Trade Dress is non-functional.***

26. The color green is not functional as applied to brake pads. The green color of Bremskerl’s brake pads does not affect the cost or quality of the pads, is not essential to their use or purpose, and does not provide any utilitarian or competitive advantage.

27. While a rough coating applied to the surface of a brake pad may serve to increase friction and condition the pad to the rotor, the color of that coating serves no function other than to indicate source. Any color, or no color at all, may be applied without affecting performance.

28. There is no statute, regulation, ordinance, code, or industry standard that requires, regulates, or standardizes the use of the color green on brake pads, and there is no industry color-coding convention that requires competitors to use green.

29. Green is not a natural or necessary by-product of the manufacturing process.

30. Competitors in the brake pad market use a range of other colors, or no color, to differentiate their products, demonstrating use of the color green is not required to compete. The color green is therefore freely available for Bremskerl to use as its exclusive source identifier, and Bremskerl’s exclusive use of green does not put competitors at any disadvantage.

**D. *Mevotech's use of competing green brake pads infringes the Bremskerl Green Trade Dress.***

31. Mevotech began manufacturing, marketing, offering for sale, and selling green brake pads in the U.S. under its TTX brand, including but not necessarily limited to brake pads marketed as "SuperMet," "CeraPhite," "Premium Met," "Premium Ceramic," and "Pursuit Certified" (collectively, the Infringing Products) long after Bremskerl adopted, used, and registered the Bremskerl Green Trade Dress.

32. Upon information and belief, Mevotech introduced its TTX brake pads in or about late 2024 and made the product line commercially available in or about 2025. The Infringing Products are currently offered for sale by Mevotech.

33. The Infringing Products bear a color green on the friction surface of the subject brake pads that is the same as, or confusingly similar to, the Bremskerl Green Trade Dress. Mevotech applies green to the lining surface of the Infringing Products which is the identical application used and owned by Bremskerl. The shade of green used by Mevotech is encompassed by the '107 Registration and is identical, or substantially identical, to the Bremskerl Green Trade Dress as illustrated below:

| Bremskerl's Green Brake Pads | Mevotech's Infringing Products |
| --- | --- |
|    |     |

34. The parties' use of green creates a highly similar overall commercial impression when the products are encountered in product images, retail listings, trade-event displays, outside their packaging, during installation, or after sale. In these settings, package wording or house marks may be absent, obscured, or secondary to the prominent green lining surface.

35. Mevotech has not obtained Bremskerl's consent, license, sponsorship, approval, or authorization to use the Bremskerl Green Trade Dress or any green color on the lining surface of its brake pads.

36. Mevotech markets and sells the Infringing Products throughout the U.S. including through its own website, national retailers and distributors, and online marketplaces.

37. The green lining surface of the Infringing Products is prominently shown in Mevotech's promotional product imagery, retail listings, packaging, trade-event demonstrations, and other marketing materials.

**E. *The parties' goods, channels of trade, consumers, and markets are the same.***

38. The parties' goods fall squarely within the same category. The '107 Registration covers the Bremskerl Green Trade Dress as applied to "brake pads for vehicles" without limitation to any particular braking system, brake-pad subtype, or vehicle class. Bremskerl's exclusive rights therefore extend to the full range of vehicle brake pads on which the color green is used or may be used, including the Infringing Products.

39. The parties' respective goods are also commercially related and travel through overlapping channels of trade.

40. National distributor networks, online catalogs, fleet-parts programs, industry publications, and multi-segment trade events increasingly place brake products for different vehicle classes before the same purchasers. Operators of mixed fleets—spanning passenger vehicles, delivery vehicles, working trucks, buses, and heavy commercial vehicles—and their purchasing agents, technicians, maintenance providers, and distributors regularly encounter, evaluate, and buy brake products across more than one vehicle class through the same purchasing relationships.

41. Mevotech has further expanded its TTX line to include air-disc braking products and promotes the Infringing Products for heavy-duty, hauling, towing, and working applications.[1]

42. As a result, Bremskerl and Mevotech market and sell green brake pads to the same categories of purchasers (distributors, retailers, technicians, installers, maintenance providers, fleet purchasers, and other end purchasers) in the U.S. commercial-vehicle and brake pad market.

43. The parties reach those purchasers through overlapping distribution channels. Mevotech offers the Infringing Products through national retailers, distributors, and major online marketplaces that serve the same categories of purchasers to whom Bremskerl markets and sells its brake pads.

44. The parties' competing products also appear together at the same industry events, such as the Heavey Duty Aftermarket Week (HDAW). That shared presence puts the parties' competing green brake pads before overlapping distributors, retailers, technicians, installers, fleet representatives, and other actual and potential purchasers in the same commercial setting.

45. Considering the strength of the Bremskerl Green Trade Dress, the similarity of the Infringing Products, the identical goods, the overlapping purchasers and channels of trade, the conditions under which the products are encountered and Mevotech's continued conduct after notice, Mevotech's continued sale of the Infringing Products is likely to cause confusion,

---

[1] *See* @FleetEquipment, TTX Brakes Bring Technician-First Focus to Heavy-Duty, YOUTUBE (Feb. 19, 2026), https://www.youtube.com/shorts/s6PLWFxCc6M; @TwoGuysGarage, Hauling, Towing, or Working? You NEED Mevotech TTX Brake Pads!, YOUTUBE (Dec. 15, 2025), https://www.youtube.com/watch?v=ZDikCS2e6_Q.

mistake, or deception concerning source, affiliation, connection, sponsorship, approval, licensing, or authorization.

### F. *Mevotech has continued its infringement with knowledge of Bremskerl's rights in the Bremskerl Green Trade Dress.*

46. Mevotech has been on notice of Bremskerl's rights in the Bremskerl Green Trade Dress. The '107 Registration has provided nationwide constructive notice of those rights since March 2, 2021. Bremskerl also provided actual notice by written correspondence dated November 3, 2025, advising Mevotech of its rights in the Bremskerl Green Trade Dress, identifying Mevotech's infringement, and demanding that Mevotech cease the sale and promotion of green brake pads in the U.S. (*See* Letter from G. Leighton, counsel for Pl., to Def. (Nov. 3, 2025), **Exhibit B** hereto.)

47. Despite having clear notice of Bremskerl's rights, Mevotech has refused to take the requested corrective actions.

48. Mevotech had countless alternative colors or designs available to it. Mevotech nevertheless selected a confusingly similar color for its brake pads in violation of Bremskerl's rights.

49. Despite Bremskerl's superior and incontestable rights, constructive notice provided by the '107 Registration and Bremskerl's actual notice of infringement, Mevotech continues to market, offer for sale, and sell the Infringing Products. As such, Mevotech's conduct has been and continues to be knowing, willful, and deliberate.

50. Mevotech's conduct deprives Bremskerl of control over the reputation, exclusivity, and commercial impression embodied in the Bremskerl Green Trade Dress, erodes the distinctiveness and goodwill therein, and threatens Bremskerl's sales and consumer relationships.

**G. *Mevotech's conduct deceives and harms the consuming public.***

51. By applying a green color to its brake pads that is the same as, or confusingly similar to, the Bremskerl Green Trade Dress, Mevotech passes off its goods as those of Bremskerl and makes false representations as to the source, sponsorship, approval, and affiliation of its products. Mevotech's conduct is likely to deceive consumers into believing the Infringing Products originate from, are associated with, or are sponsored or approved by Bremskerl, when they are not.

52. Mevotech engages in its infringing conduct in the ordinary course of its business, including designing, manufacturing, marketing, distributing, offering for sale, and selling brake pads throughout the U.S., including in this District.

53. Mevotech's deceptive conduct significantly impacts the public, including both actual and potential consumers of Bremskerl's products. The Infringing Products are advertised and sold to the general public nationwide, including to consumers in Colorado, through national retailers and major online marketplaces such as Summit Racing, XDP, Diesel Power Products, Capital Auto Parts and eBay, and are promoted directly to consumers through public-facing media, including online video and automotive programming. Because brake pads are safety-critical components relied upon by ordinary vehicle owners, technicians and fleet operators, Mevotech's deception reaches and affects a broad segment of the consuming public.

54. Mevotech's infringing conduct is not confined to an isolated communication, a private dispute, or a single individually negotiated transaction. Mevotech uses the accused presentation repeatedly and in a standardized manner across multiple products and public-facing channels, including its website, national retailer and distributor listings, online marketplaces, product imagery, online videos, automotive programming, and trade-event displays. The number of actual and potential consumers exposed to the conduct is broad and indefinite; those

consumers possess differing levels of sophistication, bargaining power, attention, and knowledge concerning brand ownership, sponsorship, and licensing relationships and the repeated nature of the conduct creates a significant potential to affect additional consumers in the future.

55. Mevotech has engaged in the foregoing conduct knowingly and/or recklessly.

56. As a direct and proximate result of Mevotech's deceptive conduct, Bremskerl has suffered and will continue to suffer injury in fact to a legally protected interest, including economic and monetary damages, loss of control over the Bremskerl Green Trade Dress and injury to its reputation and goodwill, and irreparable harm for which money damages and other remedies are inadequate. Unless Mevotech is restrained by this Court, it will continue and/or expand the illegal actions set forth herein and otherwise continue to cause irreparable harm and injury to Bremskerl by at least:

a) depriving Bremskerl of its statutory rights to use and control the use of the Bremskerl Green Trade Dress;

b) creating a likelihood of confusion, mistake, and deception among consumers and the trade as to the source of the Infringing Products;

c) causing the public to falsely associate Bremskerl with Mevotech and the Infringing Products, or, vice versa; and

d) causing irreparable harm to Bremskerl and its goodwill and diluting the capacity of the Bremskerl Green Trade Dress to differentiate Bremskerl's goods from Mevotech and others.

57. Accordingly, in addition to the other relief sought herein, Bremskerl is entitled to and seeks injunctive relief against Mevotech, its affiliates, licensees, subsidiaries, and all persons acting in concert with any of them.

## CLAIMS FOR RELIEF

### COUNT I
### Federal Trade Dress Infringement
### (15 U.S.C. § 1114; Lanham Act § 32)

58. Bremskerl realleges and incorporates by reference paragraphs 1 through 57 of this complaint as if fully set forth herein.

59. Bremskerl owns the valid, subsisting, and incontestable ’107 Registration for the Bremskerl Green Trade Dress on the Principal Register. By virtue of incontestability under 15 U.S.C. §§ 1065 and 1115(b), the ’107 Registration is conclusive evidence of the validity of the Bremskerl Green Trade Dress, of Bremskerl’s ownership of it, and of Bremskerl’s exclusive right to use the color green in commerce on brake pads for vehicles.

60. The Bremskerl Green Trade Dress is distinctive. Because the ’107 Registration is incontestable, the distinctiveness of the Bremskerl Green Trade Dress are conclusively established and may not be challenged.

61. The Bremskerl Green Trade Dress is non-functional. The color green as applied to brake pads is not essential to the use or purpose of the goods, does not affect their cost or quality, and does not place competitors at any disadvantage.

62. Without Bremskerl’s consent, Mevotech has used and continues to use in commerce a reproduction, counterfeit, copy, or colorable imitation of the Bremskerl Green Trade Dress in connection with the sale, offering for sale, distribution and advertising of the Infringing Products, in a manner that is likely to cause confusion, or to cause mistake, or to deceive, in violation of 15 U.S.C. § 1114(1).

63. Mevotech’s use of a confusingly similar green trade dress is likely to cause confusion as to the source, sponsorship, affiliation, or approval of the Infringing Products. Each of the relevant likelihood-of-confusion factors supports Bremskerl’s claim, including: the high

degree of similarity between the parties' green trade dress; the similarity of the parties' goods and the overlapping manner in which they are marketed; the overlapping channels of trade, consumers, and markets in which the parties compete; the strength of the incontestable Bremskerl Green Trade Dress; and Mevotech's intent in adopting and using a confusingly similar green trade dress with knowledge of Bremskerl's rights. Mevotech's intentional adoption of its green trade dress and continued use with knowledge of Bremskerl's rights raises an inference of a likelihood of confusion.

64. Confusion is likely not only at the point of sale but also among vehicle owners, technicians, and others who observe the green brake pads after installation, giving rise to post-sale confusion as to the source of the goods.

65. Mevotech's unauthorized use of its green trade dress in connection with brake pads constitutes infringement of the '107 Registration and Bremskerl's rights in the Bremskerl Green Trade Dress, and Mevotech's acts of infringement have been committed with the intent to cause confusion, mistake, or deception.

66. As a direct and proximate result of Mevotech's infringing activities, Bremskerl is entitled to and seeks Mevotech's unlawful profits and damages.

67. Mevotech committed the foregoing acts with full knowledge of Bremskerl's exclusive and incontestable rights in the Bremskerl Green Trade Dress. Mevotech's conduct is knowing, willful and deliberate, rendering this an exceptional case within the meaning of 15 U.S.C. § 1117(a) and entitling Bremskerl to its attorneys' fees, which Bremskerl seeks herein.

68. Mevotech's acts of infringement have caused, and unless enjoined will continue to cause, irreparable harm to Bremskerl, including injury to Bremskerl's reputation and goodwill

and the loss of Bremskerl's exclusive rights in the Bremskerl Green Trade Dress, for which Bremskerl has no adequate remedy at law.

**COUNT II**
**Federal Unfair Competition and False Designation of Origin**
**(15 U.S.C. § 1125(a); Lanham Act § 43(a))**

69. Bremskerl realleges and incorporates by reference paragraphs 1 through 68 of this complaint as if fully set forth herein.

70. Mevotech's use of its confusingly similar green trade dress in connection with brake pads falsely identifies its products and falsely suggests its products are connected with, sponsored by, affiliated with, or related to Bremskerl. Mevotech's actions are likely to cause confusion, mistake, or deception as to the affiliation, connection, association, origin, sponsorship or approval of its products, to the detriment of Bremskerl, in violation of 15 U.S.C. § 1125(a), and constitute unfair competition.

71. Mevotech's actions have been committed with the intent to cause confusion, mistake, or deception.

72. As a direct and proximate result of Mevotech's actions, Bremskerl is entitled to and seeks Mevotech's unlawful profits and damages.

73. Mevotech had constructive and actual notice of the '107 Registration prior to its adoption and continued use and its sale of the Infringing Products. Mevotech's actions commenced and have continued in spite of its knowledge that the use of the Bremskerl Green Trade Dress or substantially similar variations thereof was and is in contravention of Bremskerl's rights.

74. Mevotech's actions demonstrate a bad faith, intentional, willful, and malicious intent to trade on the goodwill associated with the Bremskerl Green Trade Dress. Mevotech's

actions have been and are willful and intentional, entitling Bremskerl to damages, including treble damages, which it seeks herein.

75. Mevotech's actions constitute an exceptional case entitling Bremskerl to its attorneys' fees, which it seeks herein.

76. Mevotech's conduct has caused, and if not enjoined, will continue to cause, irreparable harm to Bremskerl. Accordingly, Bremskerl is entitled to and seeks injunctive relief.

**COUNT III**
**Federal Dilution**
**(15 U.S.C. § 1125(c); Lanham Act § 43(c))**

77. Bremskerl realleges and incorporates by reference paragraphs 1 through 76 of this complaint as if fully set forth herein.

78. The Bremskerl Green Trade Dress is distinctive and famous, either inherently or through acquired distinctiveness, and was distinctive and famous prior to Mevotech's actions as set forth herein.

79. Mevotech's actions are likely to cause dilution of the Bremskerl Green Trade Dress and the '107 Registration by diminishing the distinctiveness of the trade dress and by lessening its capacity to identify and distinguish Bremskerl as the source of the goods provided under the Bremskerl Green Trade Dress and the '107 Registration, thereby degrading the goodwill, positive associations, and connotations of the Bremskerl Green Trade Dress and the '107 Registration.

80. Mevotech's conduct has caused, and if not enjoined, will continue to cause, irreparable harm to Bremskerl. Accordingly, Bremskerl is entitled to and seeks injunctive relief.

81. By reason of Mevotech's dilution, Mevotech willfully intended to trade on the recognition of the Bremskerl Green Trade Dress and the '107 Registration.

82. By reason of Mevotech's dilution, Bremskerl is entitled to and seeks Mevotech's unlawful profits and damages.

83. By reason of Mevotech's dilution, Bremskerl is entitled to and seeks treble damages.

84. By reason of Mevotech's dilution, Bremskerl is entitled to and seeks its attorneys' fees.

**COUNT IV**
**Trade Dress Infringement and Unfair Competition**
**(Colorado Common Law)**

85. Bremskerl realleges and incorporates by reference paragraphs 1 through 84 of this complaint as if fully set forth herein.

86. Through Bremskerl's long, continuous and substantially exclusive use, advertising and promotion, the Bremskerl Green Trade Dress has acquired secondary meaning and significance that identifies Bremskerl as the source of brake pads bearing the Bremskerl Green Trade Dress.

87. Mevotech has unfairly used the Bremskerl Green Trade Dress, or a confusingly similar trade dress, by applying a green color to its competing brake pads and offering them for sale in the same and overlapping markets and channels of trade as Bremskerl.

88. The Bremskerl Green Trade Dress is a nonfunctional feature of Bremskerl's brake pads that has acquired secondary meaning and operates as a designation of source. Colorado law protects against the copying of such nonfunctional, source-identifying features of consumer products.

89. Mevotech's unauthorized use of its confusingly similar green trade dress is likely to cause confusion and to deceive the public as to the source, sponsorship, or affiliation of

Mevotech's brake pads, including the Infringing Products, and constitutes unfair competition under Colorado law.

90. Mevotech's acts of unfair competition are knowing and willful and have caused, and unless enjoined will continue to cause, irreparable harm to Bremskerl, including injury to its reputation and goodwill and loss of control over the Bremskerl Green Trade Dress, for which Bremskerl has no adequate remedy at law, in addition to monetary damages.

**COUNT V**
**Deceptive Trade Practices**
**(CCPA, C.R.S. § 6-1-105)**

91. Bremskerl realleges and incorporates by reference paragraphs 1 through 90 of this complaint as if fully set forth herein.

92. Mevotech has engaged in deceptive trade practices within the meaning of the CCPA, C.R.S. § 6-1-105(1), including by knowingly or recklessly passing off its goods as those of Bremskerl; knowingly or recklessly making a false representation as to the source, sponsorship, or approval of its goods; knowingly or recklessly making a false representation as to affiliation, connection, or association with Bremskerl; and knowingly or recklessly engaging in unfair, unconscionable, deceptive, or misleading acts or practices.

93. Mevotech engaged in these deceptive trade practices in the course of its business, vocation, or occupation of marketing, distributing, offering for sale, and selling brake pads.

94. Mevotech engaged in these deceptive practices with actual notice of Bremskerl's rights and with knowledge of the '107 Registration.

95. Bremskerl has suffered injury in fact to a legally protected interest, and Mevotech's deceptive trade practices were the cause of that injury, including economic harm and damages, loss of control over the Bremskerl Green Trade Dress, and harm to Bremskerl's reputation and goodwill.

96. By reason of Mevotech's violations of the CCPA, Bremskerl is entitled to injunctive relief, actual damages, treble damages, and its costs and reasonable attorneys' fees pursuant to C.R.S. § 6-1-113.

**PRAYER FOR RELIEF**

Bremskerl requests that the Court enter judgment in its favor and against Mevotech as follows:

1. A judgment that the Bremskerl Green Trade Dress and the '107 Registration have been infringed by Mevotech in violation of Bremskerl's rights under common law, federal law, and/or Colorado law.

2. A judgment that Mevotech has competed unfairly with Bremskerl in violation of Bremskerl's rights under common law, federal law, and/or Colorado law.

3. A judgment that Mevotech's activities dilute and are likely to dilute the famous and distinctive Bremskerl Green Trade Dress in violation of Bremskerl' rights under federal law.

4. A judgment that Mevotech, its agents, employees, successors, assigns, affiliates, principals, parents, subsidiaries and joint venturers, and any person(s) in active concert or participation with any of them, and/or any person(s) acting for, with, by, through or under any of them, be enjoined and restrained during the pendency of this action and thereafter permanently from:

a. selling, offering for sale, advertising, or promoting any goods that so resemble the Bremskerl Green Trade Dress so as to be likely to cause confusion, mistake or deception, on or in connection with any goods that are not authorized by or for Bremskerl, including, without limitation, any goods in connection with Mevotech's infringing trade dress which is the subject of this complaint, or any other approximation of the '107 Registration;

b. using any trade dress or identifier that causes or is likely to cause confusion, mistake, or deception as to the affiliation or association of Mevotech or its goods with Bremskerl or its goods, or as to the origin of Mevotech's goods, or any false designation of origin, false or misleading description or representation of fact, or any false or misleading advertising;

c. further infringing the rights of Bremskerl in and to the Bremskerl Green Trade Dress and/or the '107 Registration or otherwise damaging Bremskerl's goodwill or business reputation;

d. further diluting the Bremskerl Green Trade Dress;

e. otherwise competing unfairly with Bremskerl in any manner; and

f. continuing to perform in any manner whatsoever any of the other acts complained of in this complaint.

5. A judgment that Mevotech, within 30 days after service of the judgment demanded herein, be required to file with this Court and serve upon Bremskerl's counsel, a written report under oath setting forth in detail the manner in which it has complied with the judgment.

6. A judgment that Mevotech be required to conduct an accounting of any profits attributable to its illegal acts.

7. A judgment that Bremskerl recover from Mevotech its damages and lost profits, and Mevotech's profits, in an amount to be proven at trial, as well as treble, enhanced, and/or exemplary damages under common law, federal law and/or Colorado law, plus pre- and post-judgment interest.

8. A determination and judgment that this case is exceptional and that Bremskerl be awarded attorneys' fees and costs incurred to enforce its rights in this action.

9. A judgment for all other relief to which Bremskerl may be entitled.

## JURY DEMAND

Bremskerl demands a trial by jury on all issues so triable.

Dated: November 17, 2026

Respectfully submitted,

By: /s/ Jason A. Wietjes

Jason A. Wietjes
Polsinelli PC
4020 Maple Ave., Ste. 300
Dallas, TX 75219
(214) 661-5519
jwietjes@polsinelli.com

Dominique E. Smith
(*pro hac vice* forthcoming)
Polsinelli LLP
2049 Century Park E., Ste. 2900
Los Angeles, CA 90067
(310) 229-1390
dominique.smith@polsinelli.com

*Attorneys for Plaintiff Bremskerl CV, LLC*